# IN THE MATTER OF THE ESTATE OF JAMES CAMPBELL, DECEASED.

## APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED FEBRUARY 24, 1905.     DECIDED MARCH 8, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

CIRCUIT JUDGE.

   Jurisdiction of circuit judge at chambers in probate to construe will not decided.

EXECUTORS—*accounts—commissions.*

   Various matters of accounting and commissions of executors on certain transactions determined.

OPINION OF THE COURT BY WILDER, J.

James Campbell died in Honolulu on April 21, 1900, leaving a will which was admitted to probate before a circuit judge of the first circuit court sitting at chambers. Abigail K. Campbell, his widow, now Mrs. Samuel Parker, and J. O. Carter and Cecil Brown qualified as executrix and executors, respectively, under said will. On August 25, 1902, the executrix and executors filed their final accounts and petitioned for an order of distribution of the estate of the deceased to themselves as residuary devisees and legatees in trust. These accounts, after reference to a master, were passed upon by the second circuit judge sitting in probate on June 12, 1903. On January 4, 1904, the executrix and executors filed a further account, in which they conformed to this decision and showed certain additional payments. On May 14, 1904, the executrix and executors filed a supplemental account, which was referred to a master, who filed a report thereon. The executrix and executors excepted to certain findings of the master. After a hearing on these exceptions the second judge filed on July 25, 1904, a decision on final accounts and entered an order in conformity with the various decisions. The executrix and executors duly appealed from that order, except as to items 1, 2, 13 and 14 thereof.

The appellants contend, in the first place, that item 3 of the order was outside the functions and beyond the power of the circuit judge, sitting in probate, to make, which item was as follows:

"That the following payments made by the executrix and executors be charged to the principal of the personalty of the estate:

| | |
|---|---|
| $357,741.91 | Bequest of one-third of the personalty to Mrs. Parker. |
| 67,156.11 | Expenses proper. |
| 40,950.00 | Family allowance. |
| 38,824.88 | Homestead repairs. |
| 32,293.40 | Investments—Assessments on shares in corporations." |

The reasons that appellants give are that the order of distribution can be made without construing the will, and in order to pass on this item the will must be construed, which construction is a function of the court of equity and not of a court of probate; that the questions involved can only properly arise after the estate has been distributed, in this case the distributees being the executrix and executors to hold as trustees, and that the beneficiaries under the trusts created by the will would not be bound by such a construction in the present proceedings. To this, the contention, on behalf of Princess Kawananakoa, the appellee, is that the trial judge, sitting in probate, must necessarily have the power to construe the will wherever and to the extent necessary for the discharge of his duty in settling these accounts. Without deciding that this contention of the appellee is correct, still, so far as it appears from the record, the accounts can be settled, a decree of distribution entered, and the executrix and executors discharged, without the necessity of construing the will at this time. After the executrix and executors have accounted for all of the property of the decedent and have properly performed their duties, and consequently are entitled to be discharged, of what use is it to determine in advance questions that might or might not arise after the distributees, as trustees, have taken over the balance of the property? It is clear that the will need not be construed in order to determine to whom the executrix and executors should turn over the balance of the property remaining in their hands. It is also clear that the accounts can be passed on and settled without construing the will at this time.

The appeal as to item 3 of the order will be sustained, except in so far as it has been consented to by the appellants with reference to "investments" and "expenses proper."

Item 4 of the order is: "That the account of the executrix and executors be surcharged with the sum of $260, being the amount of the commissions charged by them on the sum of $80,170.46 in excess of the statutory commissions." This amount was surcharged because commissions at the rate of 10,

7 and 5 per cent. were charged in the accounts filed in January, 1904, and the trial judge held that commissions at those rates could not be again charged until the expiration of another year from that time. Inasmuch as there will have to be another account filed by the executrix and executors, when the question as to whether or not commissions at those rates may be charged will more properly arise, the appeal is sustained as to this item.

Item 5 of the order is: "That the account of the executrix and executors be surcharged with the sum of $5430, being the commissions charged by them on (a) the sum of $96,100 the proceeds of sale to M. P. Robinson of 500 shares of the capital stock of the First American Bank and 250 shares of the capital stock of the First American Savings and Trust Company; (b) the investment of $96,100 in the note of M. P. Robinson secured by said shares; and (c) the receipt of $96,100 being the proceeds on payment of said note; in excess of statutory commissions." The facts in connection with this transaction were as follows: When the testator died he owned 500 shares of the First American Bank stock (afterwards the First National Bank of Hawaii) and 250 shares of the First American Savings and Trust Company upon which $50,000 had been paid. On August 13, 1900, the amount necessary to make the stock fully paid up, namely, $25,000, was paid. On January 5, 1903, the whole of this stock was sold to M. P. Robinson for $96,100, for which he gave his note, which was paid on September 15, 1903. Commissions amounting to $7,207.50 were charged in connection with this transaction.

Counsel for the appellants contend that they should only be surcharged with $1875, while Mr. Brown, one of the executors, contends that they should not be surcharged anything. The executrix and executors are entitled to charge on this transaction 2½ per cent. on $71,100 (being $96,100 less $25,000 paid to meet calls on the stock), which amounts to $1777.50. They were not entitled to again charge commissions of 2½ per cent. on the same amount. It is claimed that it was a final payment to

themselves as distributees, but from the record we cannot so find. It was paid to them as executrix and not as distributees. Consequently the appeal on this item is disallowed.

Item 6 of the order is: "That the account of the executrix and executors be surcharged with the sum of $525, being the commissions charged by them on the sum of $21,000 claimed by them to be principal collected from Liliuokalani." The facts of this transaction were substantially as follows: Testator in his life time had loaned to Liliuokalani various sums of money at different rates of interest on security of two mortgages on different pieces of real property, one of which mortgages, by agreement between testator and Liliuokalani, was not recorded. She afterwards had an additional charge made to the mortgage that was not recorded. Certain sums were paid by Liliuokalani on account, both during Mr. Campbell's life time and after his death. When the existing indebtedness was reduced to $21,000, she made an application for a further loan of $14,000. The executrix and executors cancelled the two existing mortgages and loaned her $35,000 on the security of a new mortgage with interest at 7 per cent., the interest on one of the old mortgages being at 7 per cent. and on the other at 6 per cent. The executrix and executors charged a commission of 2 1-2 per cent. on the $21,000 as principal moneys collected.

The trial judge held that the commissions charged were improper on the ground that the transaction was merely the making of an additional loan. With this view we cannot agree. The executrix and executors, so far as the record shows, used their best judgment in actually calling in the old mortgages and making a new loan. We cannot say, in the absence of evidence, that they called in the old mortgages and made a new loan simply in order to charge a larger commission. So far as the record appears, the executrix and executors used good judgment in handling this transaction. The appeal on this item is sustained.

Item 7 of the order is: "That the account of the execu-

trix and executors be surcharged with the sum of $625, being the commissions charged by them on the sum of $25,000 claimed by them to have been principal of the estate collected from H. Hackfeld & Company." The facts of this transaction were substantially as follows: H. Hackfeld & Company were owing the testator in his life time about $300,000, evidenced by their promissory note, which was payable by installments of $25,000 per annum. The note was not secured other than by endorsements of members of the firm of H. Hackfeld & Company. An installment of $25,000 became due and was paid in June, 1903. Mr. Brown, on behalf of the executors, invested this $25,000 in Pioneer bonds, but instead of taking the cash from Hackfeld & Company and going to the Bank of Hawaii, where the bonds were deposited, and receiving the bonds in exchange for the cash, for the sake of convenience and saving interest he had Hackfeld & Company deliver the $25,000 worth of bonds to him direct, and he endorsed the payment of $25,000 on the note.

The trial judge held that this was an exchange of securities. We cannot agree with the trial judge in this matter. It seems to us that the transaction, so far as the statute on commissions is concerned, was the same as if Mr. Brown had received from Hackfeld & Company the $25,000 in cash and had then gone to the Bank of Hawaii and paid the $25,000 in cash for the twenty-five $1000 bonds of the Pioneer Mill Company. Merely because some one else did this for the executor does not change the real nature of the transaction. The appeal on this item is sustained.

Item 8 of the order is: "That the account of the executrix and executors be surcharged with the sum of $1000, being the commissions charged by them on the sum of $40,000 claimed by them to have been principal of the estate collected from Lucy Peabody." The facts were as follows: Lucy Peabody was indebted to the testator in the sum of $40,000 secured by mortgage on real estate. She was over a year in arrears in interest, and it was decided by the executrix and

executors that they should press for collection of the debt. Then Mrs. Parker said she would take it off the hands of the estate and wait for the interest. Mrs. Parker purchased the mortgage and took it over, paying for the same by a check on Claus Sprockels & Co., the proceeds from which check were invested by the executrix and executors in Young Hotel bonds.

The trial judge was of the opinion that the whole transaction was merely an exchange of securities and ordered the commission surcharged. It seems to us that counsel for the appellee fails to distinguish between what he terms the result of the transaction and the transaction itself. The result of the transaction certainly was that the estate got the Young Hotel bonds and Mrs. Parker got the Peabody mortgage, but that result could certainly have been reached by either a technical exchange of securities or by a sale of the Peabody mortgage and an investment of the proceeds therefrom. In our opinion this was practically the same as cash collected and reinvested. The appeal on this item is sustained.

Items 9, 10 and 11 were as follows: "That the account of the executrix and executors be surcharged with the sum of $625, being the commissions charged by them on the sum of $25,000 claimed by them to have been principal invested in Pioneer Mill Company bonds or paid to themselves on account of final payment."

"That the account of the executrix and executors be surcharged with the sum of $1100, being the commissions charged by them on the sums of $14,000 and $30,000 claimed by them to have been principal invested on (a) $14,000 on mortgage by Liliuokalani and (b) $30,000 on mortgage by L. B. Kerr, or paid to themselves on account of final payment."

"That the account of the executrix and executors be surcharged with the sum of $1000, being the commissions charged by them on the sum of $40,000 claimed by them to have been principal invested in Young Hotel bonds, or paid to themselves on account of final payment."

Commissions were charged in each instance on the ground that these transactions constituted final payments by the executrix and executors to themselves as residuary distributees in

trust. With this contention we cannot agree. The trustees have not even yet qualified. Executors cannot declare that to be a final payment, upon which commissions are charged, which is in fact not a final payment. One of the purposes of the present proceeding is to get an order of distribution and make a final payment. This is not a case where commissions are allowed to be charged on a simple paying out, but it must be a final payment. The appeals on these items are disallowed.

Item 12 of the order is as follows: "That the account of the executrix and executors be surcharged with the sum of $84.25, being expenses incurred by them in connection with the San Jose property." These charges appear to have been incurred in connection with property belonging to the estate and should be allowed. The appeal on this item is sustained.

Item 15 of the order is as follows: "That upon a readjustment of the account showing payment of the items properly chargeable to principal out of the principal instead of the income, in accordance with opinion filed June 12, 1903, the executrix and executors will be allowed 2 1-2 per cent. on $71,000 as final payment of cash principal." The appeal on this item is sustained for the reasons hereinbefore set forth and also because new accounts from the executrix and executors from the date of the last ones filed should be called for.

The order appealed from is set aside and the cause remanded to a judge of the first circuit court for such further proceedings as may be proper not inconsistent with this opinion.

*Holmes & Stanley* for executrix and executors, appellants.

*Cecil Brown* in person.

*J. J. Dunne* for Princess Kawananakoa, appellee.