## In re LOUISIANA & N. W. R. CO.

District Court, S. D. New York.

July 30, 1938.

John S. Sheppard, of New York City, for debtor.

Beekman, Bogue, Leake, Stephens & Black, of New York City (Eugene W. Leake, of New York City, of counsel), for Beatty Committee.

Hunt, Hill & Betts, of New York City (L. J. Hunt, of New York City, of counsel), for Middle States Petroleum Corporation.

Newman & Bisco, of New York City (Hastings S. Morse, of New York City, of counsel), for Barnes Committee.

Jonah J. Goldstein and Eli Bennett Levy, both of New York City, for Independent Bondholders.

GODDARD, District Judge.

A report of the Interstate Commerce Commission and an order accompanying said report, both dated October 19, 1937, wherein a Plan of Reorganization proposed by the Debtor was approved by the Interstate Commerce Commission subject to certain modifications set forth in the said report and order, together with the transcript of the proceedings before the Commission, and all duly certified by the Commission on February 9, 1937, have been filed in this Court.

In accordance with the statute the Court directed that notice be given to all parties in interest of the time within which such parties might file objections to the said Plan of Reorganization and claims for equitable treatment, and objections thereto and claims for equitable treatment were filed by the Debtor, and the Middle States Petroleum Corporation, which is the owner of ninety nine per cent of the Debtor's capital stock, and by the Barnes Committee representing approximately $646,000 of the Debtor's bonds. The principal objection of the bondholders was the exclusion of income bonds and the distribution to bondholders of twenty five per cent in new First Mortgage bonds and seventy five per cent in stock, compared to the provisions of the original plan which gave bondholders twenty five per cent of new First Mortgage bonds, fifty per cent in new Income Debentures and twenty five per cent in stock. The effect of the elimination of Income Bonds is to subject the income of the Debtor available to bondholders to the payment of income taxes, estimated at from ten to fifteen thousand dollars per year, which would not be payable if the income were distributed to bondholders as interest on Income Debentures instead of dividends on corporate stock. The principal objection of the stockholder was the allocation of only four per cent of the new Common Stock to the old stockholder, which was claimed to be inadequate in the light of the past, present and prospective earnings of the railroad.

The Court fixed May 10, 1938 as the time for hearing all parties in interest in support of or in opposition to such objections. At the hearing it was disclosed that owners of upwards of $945,000 principal amount of First Mortgage bonds of the Debtor objected to the Plan of the Commission, and the hearing was adjourned to permit the Court to hold a conference with representatives of the Interstate Commerce Commission, and the interested parties in an effort to secure an agreement to such a compromise of the conflicting views as would be acceptable to the Commission, the parties in interest and the Court and thus provide an early reorganization and avoid the delays which would be inevitable under the procedure of § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, if the reorganization were to be the subject of further contest.

The conference was held in the Chambers of the Court on June 16, 1938 and it was attended by representatives of the Commission, the three Protective Committees, the Debtor and the stockholder. The opinion of the security holders was that the Plan should provide not only for the issuance of $517,250 of new First Mortgage bonds as authorized by the Commission, but also long term noncumulative Income Debentures in at least the amount of $351,730. The matter of the apportionment of the new stock between the old stockholder and the bondholder was left for further negotiation. To permit such negotiation, the hearing was adjourned to July 7, 1938.

On the adjourned date and after protracted negotiations and conferences, the Beatty Committee representing approximately $900,000 of bonds, the Barnes Committee representing $646,000, and the Goldstein Committee, or Independent Committee, representing $100,000 of bonds, agreed to recommend to their respective bondholders the apportionment of the new Common Stock of the Debtor on the basis of seventeen and one-half per cent to the old stockholders and eighty-two and one-half per cent to the bondholders.

To give effect to the views of the representatives of about eighty per cent of the outstanding First Mortgage bonds and ninety nine per cent of the stock ownership, will require a modification of the re-

port and order of the Commission dated October 19, 1937, in the following respects:

1. Authorize the issuance of $351,730 of noncumulative Income Debentures for distribution to the bondholders. This will provide for the holder of each $1,000 bond, $170 of new Income Debentures.

2. Substitute the above compromise apportionment of the stock between the bondholders and the old stockholders for the apportionment proposed by the Commission.

The net result of these changes, which do not disturb the underlying $100,000 mortgage, will be to give to the holder of each $1,000 First Mortgage bond of the Debtor the following:

1. $100 in cash.

2. $250 par amount in new First Mortgage bonds.

3. $170 par amount in new noncumulative Income Debentures.

4. 48 shares of new Common Stock, preferably of no par value.

Assuming an issue of new Common Stock of 120,378 shares, the bondholders will receive a total of 99,312 shares and the stockholders 21,066 shares.

The statute, § 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205, provides that I shall approve the plan if I am satisfied that it complies with the provisions of sub. b of § 77, is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders. I am not satisfied that a Plan which entirely eliminates Income Debentures and replaces the old bonds with the new First Mortgage bonds for twenty five per cent of the old issue and common stock for seventy five per cent of the old issue, is fair or equitable to bondholders, for to the extent that stock is substituted for Income Debentures, there is a loss to bondholders of the distributable earnings because the company is deprived of the benefit of a tax deduction for all interest on Income Debentures. I am of the opinion that if the principal amount of the income debentures be limited to $351,730, the total funded debt would be a conservative one in view of the apparent value of the Debtor's property and its prospective earnings.

Section 77 of the Bankruptcy Act provides also that "If the judge shall not approve the plan, he shall file an opinion, stating his conclusions and the reason therefor, and he shall enter an order in which he may either dismiss the proceedings, or in his discretion and on motion of any party in interest refer the proceedings back to the Commission for further action, in which event he shall transmit to the Commission a copy of any evidence received." sub. e.

In the face of the objections by the owners of such a large portion of all the bonds and of my inability to be satisfied that the exclusion of Income Bonds is fair and equitable, I am of the opinion that the Plan should not be approved. My conclusions and reasons are set forth above, and I direct that an order be entered referring the proceedings back to the Commission for further action, with a transcript of the record of the hearings before the Court.

The Debtor operates a small railroad not exceeding 100 miles in length and a speedy reorganization is in the interest of all parties concerned as well as in the public interest. If the proposal to issue the limited amount of noncumulative Income Debentures and the compromise apportionment of the Common Stock are acceptable to the Interstate Commerce Commission, and if the Commission's Plan should be modified to give effect thereto, the result would, in my opinion, be a fair and equitable plan in compliance with the statute, and one representing the mimimum deviation from the Commission's Plan acceptable to all of the parties in interest who have appeared in these proceedings, and one that can be consummated at an early date because it has the support of so large a precentage of bondholders and stockholders.